

# NUMBER 13-05-677-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARIA GUADALUPE DIAZ,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the 206th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Benavides**

A jury found appellant, Maria Guadalupe Diaz, guilty of possession with intent to deliver cocaine weighing at least 400 grams.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (Vernon 2003).  The jury assessed punishment at fifteen years in prison with no fine.  On appeal, Diaz argues that the evidence is legally and factually insufficient to support the verdict.  We affirm.

# I. BACKGROUND

On May 18, 2004, while crossing the United States-Mexico border at Hidalgo, Texas, Diaz was arrested for possessing, with intent to deliver, more than 400 grams of cocaine. *Id.* She was detained by Customs and Border Protection ("CBP") agents because her vehicle had only an inspection sticker but no registration sticker or front license plate. During this detention, CBP officers x-rayed Diaz's vehicle and then performed an inspection, including a search by a canine unit. The x-ray showed an anomaly in the battery compartment, and the canine alerted near the hood of Diaz's vehicle. CBP officers removed the vehicle's battery, discovered the battery had been altered to create an empty area underneath it, and found 4.8 kilograms (4,800 grams) of 71% pure cocaine inside that empty area. The CBP officer who arrested Diaz testified that as he and his partner were approaching Diaz following the canine's alert and before they said anything to her, she turned around and placed her hands behind her back "like in the position for [him] to put the handcuffs on [Diaz]."

Angel Santiago, the owner of Angel's Auto Mart in McAllen, Texas, stated that he sold Diaz the vehicle the day before her arrest. When he sold her the vehicle, a new battery had already been installed. Isidro Rodriguez, an employee of Angel's Auto Mart, testified that a new battery had been installed several months prior to the sale to Diaz because the old battery was not working. Juan Rivera Vallejo, another employee of Angel's Auto Mart, installed the new battery and stated that it was the last battery installed before the vehicle was sold. An investigator showed Rodriguez the battery taken by the CBP officers from Diaz's vehicle, and Rodriguez testified that it was not the battery that had been installed.

Greg Phillips, a criminal investigator with the Hidalgo County district attorney's

office, testified that he was part of the "HIDTA[1] task force, McAllen." Phillips told the jury that, based on his twenty years of experience in law enforcement, 4.8 kilograms of cocaine is "indicative of trafficking" as opposed to personal use. Phillips testified that in the Rio Grande Valley, 4.8 kilograms of cocaine is worth between $50,000 to $60,000. The value increases as the cocaine travels north due to the greater risks associated with transporting the drugs. Lastly, Phillips noted that it is typical in drug trafficking for the drugs to travel north and the currency to travel south.

The trial court permitted the State to present evidence of two extraneous arrests for the purposes of proving Diaz's intent and knowledge. On May 13, 2004, Sergeant Alberto Martinez of the City of Alice Police Department, pulled Diaz over for failure to signal a lane change while she was traveling south on U.S. Highway 281. Sergeant Martinez planned to give her a warning. Due to Diaz's apparent nervousness, Martinez requested consent to search the vehicle. Diaz consented. Before beginning the search, Martinez asked Diaz if she had drugs or currency hidden in the car, and she stated that she did not. Sergeant Martinez used his canine unit to search the vehicle. The dog alerted to an area of the trunk, which contained some luggage and a box of laundry detergent in a plastic bag. State Trooper Alex Benavides was also present during the search. He noticed that the box of laundry detergent appeared to be unopened from the top, but the sides were bulging and there were strings of glue around the box that appeared to come from a hot glue gun. Trooper Benavides asked Diaz for permission to open the box, and after hesitating for a moment, she gave him permission. Trooper Benavides opened the box, stuck his hand down into the detergent, and pulled up some bundles of money wrapped in tin foil. Diaz

---

[1] According to Investigator Phillips, HIDTA stands for "High Intensity Drug Trafficking Area."

3

was arrested for money laundering.[2]

On October 27, 2004, State Trooper Lucien Ebrom pulled over a pickup truck driven by Guillermina Sandoval[3] for speeding and driving on the improved shoulder. Diaz owned the vehicle and was a passenger. Sandoval and Diaz were traveling south on Interstate Highway 37. Trooper Ebrom separated the two ladies, and while he was talking with Diaz, he noticed an unnatural bulge on her chest and called for a female deputy to come to the scene to search Diaz. Prior to the search, Trooper Ebrom asked Diaz if she was carrying any U.S. currency, and she stated that she was carrying $300. Christina Flores, an Atascosa County Deputy Sheriff, performed a pat down on Sandoval and found $9,000. Sheriff Flores placed the money on top of Trooper Ebrom's car. Before Sheriff Flores could pat down Diaz, Diaz removed the money she had and put it onto Trooper Ebrom's car as well. Diaz had $6,228. Once the money was found, a canine unit was called. The canine alerted to the women's purses and to envelopes in which the cash had been placed. Both women were later indicted for money laundering. Guillermina Sandoval testified that Diaz had several sources of income, including a successful store and a mine,[4] both of which are in Mexico. Diaz sold a house in Mexico in late October or early November 2001 and had also sold property in Chicago. Sandoval stated that the cash they were carrying during the Atascosa County arrest came from three sources: (1) from the sale of the two properties; (2) from their mother and brothers; and (3) from Sandoval's personal savings, unemployment benefits, and income tax refund. Sandoval said the

---

[2] There was no testimony, expert or otherwise, that laundering money in laundry detergent actually cleans the money.

[3] Guillermina Sandoval is Diaz's sister.

[4] On re-direct examination, Sandoval stated that the mine ceased production in 2001.

money was to be used to pay one of Sandoval's debts and to pay Diaz's former attorney. They kept the money hidden on their bodies so "they wouldn't steal it from me." Sandoval claimed she carries cash because she lost money in her bank during the peso devaluation.

Diaz said the house in Mexico sold for $100,000. Diaz deposited this money into a bank in Mexico. She claimed that she was unable to access the money because her husband, from whom she was separated, had hidden all of her identification papers. In May 2001, the building in Chicago sold for $260,000. Diaz claimed that of the $260,000, she deposited $210,000 and kept $50,000 in cash. She said the $33,000 in cash in the laundry detergent box came from the $50,000 in cash.

Diaz noted that, when purchasing the vehicle from Santiago, there was a forty-five-minute delay during which time a Santiago employee was supposed to be filling the vehicle up with gas. Both Diaz and Sandoval stated that upon leaving the dealership, they had to stop for gas because the tank had not been filled. The same day Diaz bought the vehicle, she crossed the border to go to her store to price some newly arrived inventory. Due to parking difficulties at her store, she stopped in front of the store and honked for her employee to come out and park her car for her, which he did. After she finished working on the inventory, she went to dinner with the man she was dating. She stayed the night with him in Mexico. Diaz said her boyfriend drove the vehicle while they were on their date. On July 22, 2004, Diaz was indicted. Diaz denied knowingly possessing the cocaine and denied knowing that the battery had been altered. The jury found Diaz guilty of possessing with intent to deliver at least 400 grams of cocaine. *See id*. This appeal ensued.

## II. APPLICABLE LAW

In cases involving possession of controlled substances, the State must show that

5

the defendant: (1) exercised actual care, custody, control, and management of the contraband; and (2) had knowledge that the substance she possessed was contraband. *Lassaint v. State*, 79 S.W.3d 736, 739 (Tex. App.–Corpus Christi 2002, no pet.) (citing *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995)). "[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance," such as cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); *see Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.–Dallas 2003, no pet.). "'Possession' means actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon Supp. 2008). The evidence must demonstrate that the accused possessed the substance knowingly, not merely fortuitously. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd) (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "Deliver" means to transfer, actually or constructively, a controlled substance to another. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp. 2008).

Circumstantial evidence may be used to prove the elements of possession. *Moreno*, 195 S.W.3d at 325 (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985)). Culpable mental states are generally proven through circumstantial evidence. *Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.–El Paso 1995, writ ref'd) (citing *Gardner v. State*, 736 S.W.2d 179, 182 (Tex. App.–Dallas 1987), *aff'd*, 780 S.W.2d 259 (Tex. Crim. App. 1989)). Additionally, intent to deliver a controlled substance may also be proven by circumstantial evidence, "including evidence that an accused possessed the contraband." *Moreno*, 195 S.W.3d at 325 (citing *Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.–Dallas 2004, no pet.); *Mack v. State*, 859 S.W.2d 526, 528 (Tex. App.–Houston

[1st Dist.] 1993, no writ)).

Possession of cocaine need not be exclusive; however, regardless of whether the State's theory is sole or joint possession, the State must present evidence that affirmatively links the defendant to the cocaine "in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it." *Lassaint*, 79 S.W.3d at 739 (citing *Travis v. State*, 638 S.W.2d 502, 503 (Tex. Crim. App. 1982)). The defendant's mere presence at the scene is not enough. *Castellano v. State*, 810 S.W.2d 800, 805 (Tex. App.–Austin 1991, no writ). The trier of fact may infer knowledge of the presence of the cocaine when the defendant is in control over the vehicle in which the cocaine is concealed, "particularly where the amount of the contraband is large enough to indicate that the accused knew of its presence." *Id.* (citing *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981)*; United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)); *Carvajal v. State*, 529 S.W.2d 517, 520-21 (Tex. Crim. App. 1975)). However, courts have noted that when the cocaine is found secreted in hidden compartments within a vehicle, "reliance should not be placed solely upon control of the vehicle to show knowledge." *Id.* (citing *Olivier-Becceril*, 861 F.2d at 426–27; *United States v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir. 1983)).

Therefore, we must "look to additional factors indicating knowledge such as circumstances indicating a consciousness of guilt on the part of the defendant." *Id.* To that end, courts have established a non-exhaustive list of factors to be considered when

searching for links between the defendant and the narcotics,[5] and it is the State's burden to show additional facts and circumstances linking the defendant to the narcotics sufficient to raise a reasonable inference of the defendant's knowledge and control of the narcotics. *Allen v. State*, 249 S.W.3d 680, 691-92 (Tex. App.–Austin 2008, no pet.) (citing *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). "The number of the factors is not as important as the logical force the factors have in establishing the elements of the offense." *Lassaint*, 79 S.W.3d at 741. Circumstantial evidence used to prove the links must amount to more than a "strong suspicion or even a probability." *Id.* (citing *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.–Houston [14th Dist.] 1999, no pet.)). The question of whether the links have been established must be answered based on the evidence presented in each case. *Id.* (citing *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, writ ref'd).

### III. LEGAL SUFFICIENCY

---

[5] The oft-repeated factors include: (1) whether the contraband was in plain view or recovered from an enclosed place (and whether the defendant knew of the contents and existence of the hidden place); (2) whether the defendant was the owner or driver of the automobile in which the narcotics were found; (3) whether the accused was found with a large amount of cash; (4) whether the narcotics were conveniently accessible to the defendant or found on the same side of the vehicle as the accused was sitting; (5) whether the defendant was in close proximity to the narcotics; (6) whether a strong residual odor of the narcotics existed; (7) whether the defendant was in possession of other contraband when arrested; (8) whether the defendant was found with paraphernalia to use the contraband; (9) whether the defendant's physical condition indicated recent consumption of the narcotics; (10) whether the defendant's conduct indicated a consciousness of guilt; (11) whether the defendant attempted to flee or escape; (12) whether the defendant made any furtive gestures; (13) whether the accused had any special connection to the narcotics; (14) whether the defendant made incriminating statements linking herself to the narcotics; (15) the quantity of the contraband; and (16) whether the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.–Corpus Christi 2002, no pet.) (citing *Carvajal v. State*, 529 S.W.2d 517, 520 (Tex. Crim. App.1975); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex. App.–Houston [1st Dist.] 1998, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 627 (Tex. App.–Fort Worth 1998, pet. ref'd); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.–Corpus Christi 1997, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 853 (Tex. App.–Tyler 1996, no writ); *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.–Beaumont 1996, no writ); *Washington v. State*, 902 S.W.2d 649, 652 (Tex. App.–Houston [14th Dist] 1995, writ ref'd); *Watson v. State*, 861 S.W.2d 410, 414–15 (Tex. App.–Beaumont 1993, writ ref'd)); *Vargas v. State*, 883 S.W.2d 256, 263 (Tex.App.–Corpus Christi 1994, writ ref'd).

In her first issue, Diaz argues that the evidence is legally insufficient to support the jury's verdict that Diaz knowingly or intentionally possessed the cocaine.

## A. Standard of Review

When an appellate court conducts a legal sufficiency review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier of fact is the sole judge of the credibility of the witnesses, the facts, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-19; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151. We do not substitute our own judgment for that of the trier of fact, nor do we reevaluate the weight and credibility of the evidence, whether circumstantial or direct. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd); *Beckham*, 29 S.W.3d at 151.

In a legal sufficiency review, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction, each fact need not point directly and independently to the guilt of the appellant. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)). Because circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

9

The fact-finder may infer knowledge from the circumstances surrounding the defendant's acts and from the conduct of and remarks made by the defendant. *Id.* (citing *Lewis v. State*, 638 S.W.2d 148 (Tex. App.–El Paso 1982, writ ref'd; *Sharpe v. State*, 881 S.W.2d 487 (Tex. App.–El Paso 1994, no writ)). We use the same standard of review to examine circumstantial and direct evidence cases. *Guevara*, 152 S.W.3d at 49.

## B. Discussion

Diaz was arrested with 4,800 grams of 71% pure cocaine secreted in a hidden compartment in her vehicle made by cutting down a car battery, leaving a space underneath the battery. Investigator Phillips testified that such an amount of cocaine is for delivery and not for personal use. In the Rio Grande Valley, 4,800 grams of cocaine would have a value of between $50,000 to $60,000. The arrest occurred while Diaz was crossing the border from Mexico into the United States. Diaz owned the vehicle and was the only person inside the vehicle when she was arrested. *See Harris v. State*, 486 S.W.2d 88, 91 (Tex. Crim. App. 1972) (finding evidence to be sufficient when defendant was only occupant of vehicle when drugs were found, defendant locked vehicle before entering establishment wherein he was arrested, and confidential informant identified make and color of vehicle driven by defendant); *see also Guidry v. State*, No. 09-94-123 CR, 1994 WL 660152 at *2 (Tex. App.–Beaumont Nov. 23, 1994, no writ) (not designated for publication) (holding evidence legally sufficient for conviction of unlawfully carrying a weapon when defendant was in exclusive possession and control of vehicle because he was alone in car during all material times and the weapon was conveniently accessible to defendant at all times).

During the arrest, Diaz was "clearly upset, crying at times." When she saw the

agents coming towards her to effect her arrest and before a word was spoken, she turned her back to the agents while placing her hands behind her "like in the position for [the agent] to put the handcuffs on." On two other occasions, Diaz had been arrested on suspicion of money laundering while traveling south with a total of nearly $40,000 either hidden on her body, in her purse, or in a box of laundry detergent. A canine unit alerted to the scent of narcotics on the money taken from Diaz's person and purse and to the area in Diaz's trunk where the laundry detergent was stored. Reviewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the elements of possession with intent to deliver beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Watson*, 204 S.W.3d at 414-17. Accordingly, we overrule Diaz's first issue.

## IV. FACTUAL SUFFICIENCY

In her second issue, Diaz argues that the evidence is factually insufficient to support the verdict.

### A. Standard of Review

Our duties change when reviewing for factual sufficiency. We no longer view the evidence solely in the light most favorable to the prosecution; we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict appears clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 414-15.

> An appellate court judge cannot conclude that a conviction is 'clearly wrong' or 'manifestly unjust' simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of the conflict.

*Id.* at 417. For us to order a new trial based on factual insufficiency, there must be some

11

objective basis in the record to support a conclusion that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

**B. Discussion**

Diaz testified that she had no knowledge of the secret compartment or of the cocaine. Diaz argues that, while the vehicle was out of her control, the battery was surreptitiously replaced and the cocaine was hidden in the newly created compartment. According to Diaz, the vehicle was out of her possession twice after she purchased it: (1) when Santiago's employee took it to fill it up with gas; and (2) when her employee parked the car for her. Sandoval and Diaz both stated that Santiago had the vehicle in his or his employee's control for forty-five minutes after the purchase but prior to their taking the car off the car lot. Diaz also offered an explanation for the money found hidden on her person, in her purse, and in the box of detergent: it came from other sources including the sale of property.

The State supported its argument by showing that Diaz was arrested while crossing the border with 4.8 kilograms of cocaine secreted underneath a modified battery in her vehicle. *See Coleman v. State*, 113 S.W.3d 496, 501 (Tex. App.–Houston [1st Dist.] 2003), *aff'd*, 145 S.W.3d 649 (Tex. Crim. App. 2004) (finding a link between the accused and the drugs when the drugs are found in an enclosed space)). Diaz owned the vehicle and was the only person in the vehicle at the time. *See Menchaca*, 901 S.W.2d at 652 (concluding that knowledge of presence of contraband may be inferred when accused has control over the vehicle, particularly when the amount of contraband is large); *Harris*, 486 S.W.2d at 91; *see also Guidry*, 1994 WL 660152, at *2. The amount of cocaine indicated an intent to deliver, not personal use. While the agents were approaching Diaz to arrest

12

her, she placed her hands behind her back and turned her back to them without the agents saying a word. Diaz was "clearly upset, crying at times." Diaz had been arrested on two other occasions while carrying large sums of cash hidden on her person and in a laundry detergent box. The cash from the two arrests amounted to nearly $40,000. A canine unit alerted to the area in Diaz's trunk where the laundry detergent box was and also to the money taken from Diaz's person and purse.

While viewing the evidence neutrally, we must still give deference to the jury's resolution of the different theories presented at trial. *Moreno*, 195 S.W.3d at 325 (citing *Zuniga v. State*, 144 S.W.3d 477, 481–82 (Tex. Crim. App. 2004); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)); *see also Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.–Dallas 1998, no pet.) (noting that "the mere existence of an alternative reasonable hypothesis does not render the evidence factually insufficient"). Reviewing all of the evidence in a neutral light, we are unable to find an objective basis in the record that demonstrates the jury's verdict is against the great weight and preponderance of the evidence or is clearly wrong and manifestly unjust. Accordingly, Diaz's second issue is overruled.

## V. Conclusion

Having found the evidence to be legally and factually sufficient, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and
filed this the 30th day of October, 2008.

13