NO. 07-10-00460-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 19, 2012

JUAN CARLOS VELETA-HERNANDEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 69TH DISTRICT COURT OF SHERMAN COUNTY;

NO. 886; HONORABLE RON ENNS, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Juan Carlos Veleta-Hernandez appeals from his jury conviction of the offense of possession of marijuana and the resulting sentence of eight years of imprisonment. Appellant challenges the court's judgment through five points of error. We will affirm.

Background

Appellant plead not guilty to the indictment charging him with "intentionally or knowingly possess[ing] a usable quantity of marijuana in an amount of two thousand pounds or less but more than fifty pounds." [1]

---

[1] See Tex. Health & Safety Code Ann. § 481.121(5) (West 2009).

Testimony at trial showed a Stratford, Texas, police officer stopped appellant about noon on July 11, 2007, because the license plate on the pickup truck he was driving was obstructed. The officer spoke with appellant and his passenger. When the officer received information he considered conflicting, he detained appellant and requested consent to search the truck. He spoke with appellant in Spanish because appellant did not understand English. Appellant signed a form, written in English, consenting to the search of the truck.

The officer called his supervisor, who came to observe the search and watch appellant and the passenger. During the search, the officer found a shallow compartment underlying the bed of the pickup truck. Entry to the compartment was gained by removing a metal plate bolted on the side of the compartment, underneath the vehicle's left rear wheel well. Two wrenches, suitable to use to remove the bolts, were underneath the driver's seat of the truck. Inside the compartment, the officer found what he recognized as bundles of marijuana. After appellant and his passenger were arrested, police inventoried sixty-four brick-sized bundles. Laboratory testing confirmed the substance as marijuana, and determined its weight as 67.41 pounds.

At trial, appellant testified he had no knowledge of the marijuana. The jury nonetheless found him guilty. Punishment was assessed as noted and this appeal followed.

Analysis

Motion to Suppress

In appellant's first point of error, he challenges the trial court's denial of his motion to suppress the evidence seized from the truck.

2

As an appellate court, we review the trial court's ruling on a motion to suppress under an abuse of discretion standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). In determining whether a trial court has abused its discretion, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). If, as is true in the case before us, the trial court has not made explicit findings of fact, the appellate court infers the necessary factual findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports these implied fact findings. *Id.*, *citing State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). Therefore, we afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when its implicit fact-finding is based on an evaluation of the credibility and demeanor of witnesses. *Id.*

To support the legality of the officers' search of the pickup truck, the State relied on the consent for the search appellant gave the arresting officer. Appellant contends on appeal his consent was ineffective, for two reasons. We must reject both reasons. He first points out his consent to the search was requested and obtained before *Miranda* warnings were given him. But the trial court did not err by failing to agree that *Miranda* warnings were required to validate appellant's consent. The warnings required by *Miranda* to precede custodial interrogation have not been required as precedent to a valid consensual search under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 232-33, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (rejecting idea that voluntary consent to search necessarily requires warning of right to refuse consent; contrasting considerations underlying *Miranda* requirements from those of valid consent for search).

Appellant secondly contends his consent was ineffective because it was not "knowing," that is, he did not understand the form he signed because it was written in English, which he does not read. We evaluate appellant's contention he lacked sufficient knowledge to understand his action within the general requirement that consent to search, to be valid under the Fourth Amendment, must be voluntary. *See, e.g., Schneckloth*, 412 U.S. at 248 (holding voluntariness test circumstances include "the characteristics of the accused"); *Reasor v. State*, 12 S.W.3d 813, 817-18 (Tex.Crim.App. 2000) (noting determination of voluntariness includes such factors as age, education and intelligence of accused). The voluntariness of an individual's consent to a search is a question of fact to be determined from all the circumstances. *Gutierrez v. State,* 221 S.W.3d 680, 686-87 (Tex.Crim.App. 2007); *Houston v. State,* 286 S.W.3d 604, 608-09 (Tex.App.—Beaumont 2009, pet. ref'd). In Texas, the State must show by clear and convincing evidence that consent was obtained voluntarily. *Gutierrez*, 221 S.W.3d at 686.

Appellant's motion to suppress was denied after a pretrial hearing at which the arresting officer was the only witness. At the hearing, the trial court heard the arresting officer testify that he is fluent in Spanish and conducted his conversation with appellant in Spanish. The officer gave affirmative responses to questions asking whether he explained to appellant in Spanish, "what he was signing," "that he did not have to sign it," and "the consequences of him signing." Asked whether he "read through each and every line" in Spanish, the officer responded he could not recall. The officer testified also that he questioned appellant about his destination, the ownership of the vehicle, and whether "he had anything illegal in his vehicle." The officer did not testify to any difficulty conversing with appellant in Spanish. In his argument to the trial court,

4

appellant contended simply that valid consent could not be based on his signature on a document printed in English since he does not understand English.

Appellant's argument would make the language of a written consent form a litmus test of voluntariness, contrary to established law that requires a court to take all the circumstances of the consent into account when deciding the fact issue of its voluntariness. *See Gutierrez*, 221 S.W.3d at 686. Certainly that an individual's consent is evidenced by his signature on a form written in a language he does not understand is a significant circumstance in such an evaluation. But it cannot be the only circumstance taken into account.

Here, we see no error in the trial court's implicit conclusion, based on the evidence before it, that appellant's consent was voluntarily given. Except for the evidence appellant did not speak or read English, the court heard no evidence he did not understand the consent he was asked to give.[2] The Austin court of appeals recently found valid the consent given by a Spanish-speaking individual through execution of an English-language consent form after it was explained to the individual in Spanish. *Hernandez v. State,* No. 03-08-00246-CR, 2009 Tex. App. Lexis 1384 (Tex.App.—Austin, Feb. 25, 2009) (mem. op., not designated for publication) (form for consent for saliva sample translated for Spanish-speaking suspect). *See also Cancel v. State*, No. 01-02-0587-CR, 2003 Tex. App. Lexis 1767, at *12 (Tex.App.—Houston [1st Dist.] Feb. 27, 2003, no pet.) (mem. op., not designated for publication) (finding consent to search valid despite contentions of communications difficulties). Considered in the light most

---

[2] Nor do we see anything elsewhere in the record to cast doubt on appellant's understanding of his consent to search the truck. During his testimony at trial, appellant, testifying through an interpreter, agreed he consented to the search.

5

favorable to the trial court's ruling, the officer's testimony of his Spanish-language conversation with appellant permitted the court to conclude appellant had sufficient understanding of the consent requested of him to make his consent voluntary.

We overrule appellant's first point of error.

Denial of Instructed Verdict and Sufficiency of the Evidence

We address appellant's second and third issues together. In each point, appellant challenges the sufficiency of the evidence to support his conviction. His challenge focuses on the evidence showing he had knowledge of the marijuana in the truck. He testified at trial he was not aware of the truck's hidden compartment.

Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). In reviewing the sufficiency of the evidence, we look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *quoting Jackson*, 443 U.S. at 318-19. The sufficiency standard mandates that an appellate court defer to the fact finder's credibility and weight determinations. *Brooks*, 323 S.W.3d at 895. The jury may believe all, part or none of a witness's testimony. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). After giving proper deference to the fact finder's role, we will

uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009).

To prove appellant's possession of marijuana, the State was required to establish that he exercised care, control, and management over the marijuana, and that he knew he was in possession of it. *Evans v. State,* 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App. 2005) (stating analysis to connect accused to contraband); *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988) (stating elements of offense).

Proof of knowledge most often is an inference drawn by the jury from all the surrounding circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Proof of knowledge may arise from the conduct of and remarks by the accused or from circumstances surrounding the acts engaged in by the accused. *Sharpe v. State*, 881 S.W.2d 487 (Tex.App.--El Paso 1994, no pet.). A driver's control over the vehicle may give rise to an inference of knowledge of the presence of contraband concealed in the vehicle, particularly when the amount of contraband is large enough to indicate that the accused knew of its presence, *Castellano v. State*, 810 S.W.2d 800, 806 (Tex.App.—Austin 1991, no pet.), but courts have expressed hesitation to rely solely on a defendant's control of the vehicle to show knowledge of the contents of hidden compartments. Additional factors indicating knowledge, such as circumstances indicating a consciousness of guilt, have been required. *Id. See also Satchell v. State,* 321 S.W.3d 127, 134 (Tex.App.—Houston [1st Dist.] 2010, pet. ref'd) (noting circumstances indicative of a consciousness of guilt, including conflicting statements).

7

On examining the record, we find evidence that, together with the undisputed fact appellant was driving the vehicle containing it, permitted rational jurors to conclude beyond a reasonable doubt he knew the contraband was in the vehicle. First, we note the large quantity of the marijuana. As noted, it weighed 67.41 pounds and comprised 64 or 65 bricks. Testimony estimated its "street value" up to $765,770. This amount of marijuana supports an inference its possessor had knowledge of it. *Castellano,* 810 S.W.2d at 806; s*ee Menchaca v. State,* 901 S.W.2d 640, 652 (Tex.App.—El Paso 1995, pet. ref'd) (noting rational inference that defendant would not have been entrusted with taking a valuable cargo across an international border if he were a mere innocent, ignorant of all the details surrounding his responsibility and the importance of the cargo in his care); *Manzo v. State,* No. 08-08-00325-CR, 2010 Tex.App. LEXIS 4937, at *16 (Tex.App.—El Paso June 30, 2010, no pet.) (mem. op., not designated for publication) (noting 175.3 pounds of marijuana with approximate value of $40,000 to $100,000 supported inference of knowledge). In that regard, the jury in this case also could have inferred the marijuana had crossed an international border because the pickup appellant was driving bore license plates from Chihuahua, Mexico.

Second, appellant exhibited behavior the jury could have seen as deceptive, indicative of knowledge of guilt. *See Evans,* 202 S.W.3d at 162 n.12; *Lassaint v. State,* 79 S.W.3d 736, 744 (Tex.App.—Corpus Christi 2002, no pet.). The jury heard testimony that appellant and his passenger gave the officer conflicting stories about their destination (one saying they were going to "Wichita," the other, to "Washington"), the purpose of their trip (appellant said they were going to see his uncle and passenger said they were going to Wichita to look for work"); how long they had known each other (appellant said not long and then a year while the passenger said a month), and the

8

truck's owner (appellant said a friend of the passenger's owned the truck and the passenger said his uncle was the owner). The vehicle was registered to a party other than appellant and his passenger. After appellant was arrested, the jury could have concluded, he gave another version of events. The jury also could have believed the officer's description of appellant as "a little nervous" at their initial contact. The officer further noted the passenger seemed nervous because he would not make eye contact with him and just "kept looking forward."

Third, the jury could have seen other conduct by appellant as indicating a consciousness of guilt. The arresting officer's supervisor testified he watched appellant while the officer removed the plate to the hidden compartment. He testified appellant was "picking at grass, just real nervous. He wasn't standing still. He was looking at the passenger quite nervously. I mean, he was—he was not calm and relaxed like somebody would be if they had nothing to hide." He further testified that once the officer removed the plate, appellant "went from picking grass, playing with grass, playing with his hands to…shoulders slumped forward, ducked his head, and you could just see that it drained him. He knew they had been caught."

The inference the supervisor drew from appellant's shoulder-slumping reaction to the opening of the hidden compartment, that indicating appellant "knew they had been caught," is one of the reasonable inferences that could be drawn from appellant's reaction. *See Manzo,* 2010 Tex.App. LEXIS 4937, at *15-16 (finding evidence of anxious conduct permitted rational inference of consciousness of guilt). Appellant testified, and urges, that his reaction instead simply indicated his surprise that the vehicle contained such a compartment. That, too, is a reasonable inference that could

9

be drawn by someone observing his conduct. The choice between reasonable inferences that may be drawn from evidence is made by the jury. *See Evans,* 202 S.W.3d at 164; *Hooper,* 214 S.W.3d at 13. The jury here was free to agree with the guilty inference.

The jury also heard appellant's testimony describing how he came to be driving through Stratford, unaware he was carrying such a cargo. He testified that every element of the charge was true except his knowledge of the marijuana. He told the jury he was a carpenter by trade, and at the time of his arrest was living temporarily in Moriarty, New Mexico, for work. He had a roommate, a man named Ortiz. Appellant said that another man, Madrid (the passenger at the time appellant was stopped), came to the residence where appellant and Ortiz lived, in the early morning hours. Madrid was to drive the truck to Wichita and drive another vehicle back to New Mexico. Ortiz was supposed to accompany Madrid but could not do so. They two woke appellant and, as a favor, he agreed to drive with Madrid in Ortiz's place. He was not scheduled to work that day. He did not inspect the truck and did not know of the hidden compartment or of the marijuana. Madrid had driven the truck until they reached Stratford, when he suggested that appellant drive. As noted, appellant asserted his reaction to the presence of the drugs was one of surprise.

Appellant was the only witness who testified to the events he said happened in Moriarity. No other witness supported his testimony of the purpose of his trip. Although, as he points out on appeal, much of his testimony was uncontroverted, the jury still was not required to accept his explanation for his presence in Stratford with a

large amount of marijuana.  *See Evans,* 202 S.W.3d at 164 (discussing difference between "undisputed facts" and "uncontradicted testimony").

It is worth noting at this point that the State was not required to prove appellant possessed the marijuana to the exclusion of Madrid.  Evidence of the joint possession of contraband will support a conviction.  *Martin,* 753 S.W.2d at 387.

Considered in the light most favorable to the verdict, we find the evidence of inconsistent and changing stories, nervous and anxious behavior, and a large and valuable cargo, when added to the inferences properly drawn from appellant's control of the vehicle, permitted the jury rationally to conclude appellant was not ignorant of the presence of the contraband but instead was aware of it.  For that reason, the trial court did not err by denying appellant's motion for instructed verdict, and the evidence is not insufficient to support the conviction.  We resolve appellant's second and third points of error against him.

Jury Misconduct and Trial Court's Response to Jury Note

In his fourth point of error, appellant argues the trial court erred in failing to instruct the jury, in response to its note during deliberations, that the jury should not consider an issue of race.  Appellant contends the error denied him due process and equal protection of the law.

While in deliberations during the guilt-innocence phase of trial, the jury sent out a note asking, "Considering evidence for the case, can Defendant's race and culture be considered toward(s) the way he would react or respond to the situation he is involved with?  Example:  The way a Hispanic male may act or respond to the situation he is

11

involved in." The court responded, "You may consider all facts and circumstances that are in evidence."

The Code of Criminal Procedure regulates communications between the court and jurors during deliberations. *See* Tex. Code Crim. Proc. Ann. art. 36.27 (West 2006). As provided by the statute, the trial court gave appellant the opportunity to object to its proposed response to the jury's question. Appellant stated he had no objection to the trial court's response.

As noted, appellant couches his complaint in terms of constitutional violations. Even constitutional violations are generally subject to the error preservation requirements. Because his asserted due process and equal protection violations were not raised with the trial court, the claims present nothing for review on appeal. *See Saldano v. State,* 70 S.W.3d 873, 888 (Tex.Crim.App. 2002) (equal protection claim forfeited by failure to assert error at trial); *Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App. 1995) (due process complaints not preserved for review absent timely, specific objection). Further, courts have found claims of error in trial court responses to jury questions forfeited for lack of preservation. *See Word v. State*, 206 S.W.3d 646, 649-50 (Tex.Crim.App. 2006), *citing Green v. State,* 912 S.W.2d 189, 193 (Tex.Crim.App. 1995); *Ortega v. State,* Nos. 11-03-00126-CR, 11-03-00127-CR, 2004 Tex.App. LEXIS 5797 (Tex.App.—Eastland June 30, 2004,pet. ref'd) (mem. op., not designated for publication). Appellant's fourth point of error thus presents nothing for review, and is overruled.

Reopening of Case to Admit Marijuana

In his last point of error, appellant argues the trial court erred by permitting the State to reopen its case to admit as evidence 65 bundles of marijuana, "when the record shows that only 64 bundles were seized." The point of error must be overruled, for two reasons.

When police inventoried the bundles of marijuana, they counted 64 bundles. The DPS chemist also testified he examined 64 bundles. But when the bundles were brought to the courtroom, 65 bundles were counted. Appellant stipulated that all of the bundles in court bore crime lab labels. The report admitted at trial stated the bundles tested positive for marijuana and weighed 67.41 pounds, an amount within the statutory range. *See* Tex. Health & Safety Code Ann. § 481.121(5) (West 2009) (felony of the second degree to possess marijuana of 2,000 pounds or less but more than 50 pounds).

In his argument under this point of error, appellant contends the trial court should not have admitted one of the 65 bundles, or perhaps should have excluded all the bundles.

The first reason the point of error must be overruled is that it does not comport with the objection appellant voiced to the trial court. That objection was a general objection to the reopening of the State's presentation of evidence, not an objection focusing on the number of bundles of marijuana admitted. To preserve error for appellate review, the party's point of error on appeal must comport with the objection made at trial. *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App. 2002).

13

Second, appellant's argument contains no citation to authority to aid in our understanding of the nature of his complaint and in its disposition. An argument that fails to cite supporting authority presents nothing for review. Tex. R. App. P. 38.1(i); *Rocha v. State,* 16 S.W.3d 1, 49 (Tex.Crim.App. 2000). We therefore resolve appellant's final point against him.

Having resolved each of appellant's points of error against him, we affirm the judgment of the trial court.

James T. Campbell<br>
Justice

Do not publish.