**Juan Chavez CASTELLANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–89–209–CR.**

Court of Appeals of Texas,
Austin.

May 15, 1991.

Lee Norton Bain, Georgetown, for appellant.

Ken Anderson, Dist. Atty., Sally Ray, Asst. Dist. Atty., Georgetown, for appellee.

Before POWERS, ABOUSSIE and ONION *, JJ.

_____

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

ONION, Justice.

A jury found the appellant guilty of aggravated possession of marihuana, and assessed his punishment at thirty (30) years imprisonment.

Appellant advances three points of error. In points of error one and three, he challenges the sufficiency of the evidence to sustain the conviction. In his second point, appellant urges that the trial court erred by refusing to give a jury instruction on the accomplice witness rule. We will affirm the judgment of conviction.

Appellant and Armando Garza Solis were tried jointly for the same offense,[1] though separately indicted. There were no motions for severance. We shall initially consider the second point of error. Its disposition will affect our discussion of the other points of error.

■ After the State rested its case at the guilt/innocence stage of the trial, appellant testified. Thereafter, the co-defendant Solis called his mother and sisters as witnesses, and then personally testified. The appellant requested an accomplice witness charge with regard to co-defendant Solis.[2] The request was denied.

■ Appellant appears to argue that because Solis was indicted for the same offense, Solis was an accomplice witness as a matter of law. See Harris v. State, 790 S.W.2d 568, 579 (Tex.Cr.App.1989); cf. De-Blanc v. State, 799 S.W.2d 701, 709, n. 7 (Tex.Cr.App.1990). An accomplice witness' testimony must be corroborated under article 38.14 and the jury instructed only when the State calls the witness and relies on such witness' testimony. When the accused calls a witness and offers his testimony, such witness is not an accomplice witness whose testimony must be corroborated as required by the statute. See Brown v. State, 576 S.W.2d 36, 42 (Tex.Cr. App.1978); Cranfil v. State, 525 S.W.2d

518, 520 (Tex.Cr.App.1975). In Aston v. State, 656 S.W.2d 453 (Tex.Cr.App.1983), it was held error for the trial court to instruct the jury that a defense witness was an accomplice. Jenkins v. State, 484 S.W.2d 900, 902 (Tex.Cr.App.1972), also made clear that a defense witness is not an accomplice witness, and such witness' testimony incriminating the defendant could be considered in the assessment of the sufficiency of the corroboration of an actual accomplice witness' testimony.

Only recently the Court of Criminal Appeals dealt with a fact situation somewhat similar to the instant one. See Selman v. State, 807 S.W.2d 310 (Tex.Cr.App.1991). In Selman, the defendant and a co-defendant, Barnes, were separately indicted but were jointly tried before a jury. The defendant Selman testified in his own behalf. Barnes did not. The court submitted separate charges to the jury. Barnes asked for and received an instruction in his charge that the defendant Selman was an accomplice witness as a matter of law over Selman's objection that the same was in contravention of Article 38.05 of the Code of Criminal Procedure. The court held that Selman was injured when the same jury that was to determine his guilt or innocence heard the trial court describe him as "an accomplice as a matter of law," even though that the instruction was included only in the charge on Barnes' case. The court concluded that Selman had testified in his own behalf, and was not "formally" a witness for the State or for the co-defendant, and that the co-defendant was not entitled to the jury instruction.

In the instant case, the co-defendant Solis, testifying in his own behalf, was not a witness for the State or for the appellant. If the trial court had given the instruction requested in the joint trial, it may well have encountered Selman error.[3] We con-

---

1. The jury assessed Solis' punishment at ten years' imprisonment, probated.

2. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed and the corroboration is not sufficient if it merely shows the

commission of the offense. Tex.Code Cr.P.Ann. art. 38.14 (1979).

3. In the instant trial a joint jury charge was given, rather than separate charges as in Selman.

clude that the trial court did not err in denying appellant's requested jury charge. The second point of error is overruled.

In points of error one and three, appellant contends that the trial court erred in overruling his motion for an instructed verdict, and that the evidence is insufficient to support the conviction. Appellant and Solis offered their defensive evidence after the motion was overruled. We shall, however, consider the contentions as sufficiency questions. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Cr.App.1990).

About 1:00 a.m. on November 9, 1988, state troopers Will Crais and Andy Sheppard were on patrol north of Georgetown on Interstate Highway 35. A yellow 1976 Ford automobile passed them, and then weaved out of its marked lane and onto the shoulder of the road. The troopers stopped the vehicle. Solis, the driver, produced his driver's license. He stated that the car was borrowed from "a friend" and that he did not know anything about insurance on the car; that he was going to Dallas to visit a cousin, but he would not give the cousin's address; and that he knew only the first name of his passenger. Trooper Sheppard questioned the appellant-passenger in Spanish. Appellant stated he did not know the last name of the driver; that they were going to Dallas to look for work; that they were not visiting anyone in particular; and that he did not know the owner of the car.

The troopers checked and found that the car was registered to another individual and determined that the two men had given somewhat conflicting stories. Solis was then asked for and gave both oral and written consent to search the 1976 Ford. Trooper Crais found that the back seat was loose, and when he moved it, he smelled the odor of marihuana. In the side panels in the back of the automobile the trooper found bundles of what appeared to be marihuana. Thereafter, neither appellant nor Solis gave the officers any additional information. A subsequent search of the vehicle at the station revealed four more concealed compartments containing bundles of what appeared to be marihuana. Two com-partments were in the kick panels in the front passenger portion of the vehicle, and two more were in "rocker panels" which ran the entire length of the car, the entrance to which was in a rear-wheel well. The chain of custody was established and the chemist testified that the substance found in the bundles was sixty pounds and eight ounces of marihuana, excluding the wrapping and the tape.

At the jail it was found that appellant had a calculator in his shirt pocket, an address book, and over $44.00 in cash. Solis had a pocket-size pen razor blade knife, and a wallet with a marihuana leaf emblem inscribed, "This Bud's For You."

Hollis Riggins, a twenty-two year veteran of the Texas Department of Public Safety, testified about sophisticated drug smuggling operations from the interior of the Republic of Mexico into the United States, including the use of concealed compartments. Riggins told the jury that officers "almost never find drugs on the persons of the smugglers" or "anything that would be exposed to any officer that inspected the car." Calculated according to Riggins' testimony, the value of marihuana discovered was $38,000.00.

The State offered evidence of the rather colorful title history of the 1976 Ford vehicle. The inoperable vehicle had been sold for $100.00 to a Sergio Manzano of LaJoya, Texas, on May 11, 1988, in a public salvage sale in Dallas by the J.D. Towing Service. On September 19, 1988, the Hidalgo County Tax assessor received payment for the transfer of the registration to Sergio Manzano of P.O. Box 53, LaJoya, Texas. Title was issued to Manzano on November 10, 1988, the day after appellant and Solis were stopped in Williamson County. The postmaster of LaJoya, a town of approximately 1200 people, testified that she had never heard of Manzano, and that Box 53 was registered to Baldemar Lozano and had no other authorized recipients.

The 38–year–old appellant testified that he lived in LaJoya near McAllen in the Rio Grande Valley; that he was originally from Mexico and had no formal education; that he was an unemployed construction work-

er, the father of eight children, and drawing unemployment compensation at the time of the alleged offense. He admitted that he had known the co-defendant for about a year; that they lived about six blocks apart in LaJoya; and that they were good friends who ran around and went out drinking together. He insisted, however, he did not know Armando's last name.

Appellant related that Armando asked him to go to Dallas to look for work; that Armando picked him up in the 1976 Ford; that he never drove the vehicle; and that Armando awaken him just before they were stopped by the officers. He testified that he was unaware that marihuana was in the car; that he had never seen marihuana and did not know what it smelled like. On cross-examination, he admitted that he worked for his brother-in-law at a junk yard in LaJoya and that there was a mechanic there; that he hauled cars that had been purchased and helped "washing the iron or something;" that the junk yard sold used parts. He acknowledged that on occasion he used his brother-in-law's 1985 black Chevrolet pickup truck with a mobile phone in it, and that he had called Armando on that phone on November 7, 1988. He denied knowing a Sergio Manzano. Appellant also admitted he had paid cash for the gasoline that was put in the Ford at Kingsville, where he had fixed the dash lights on the car so they could see how fast they were traveling. He related that he found the calculator in the car and slipped it into his pocket and that he did not know how to use it. He could not remember having an address book. When reminded of his persistent efforts, while in jail, to obtain the book, he explained he wanted to contact a friend in California to assist him in obtaining an attorney.

The 24–year–old Armando Solis testified that he had known the appellant for about eighteen months prior to the alleged offense, but that he did not know Juan's last name. He stated that the appellant had contacted him on November 7, 1988, about going to Dallas to visit appellant's sister; that he had told appellant he had no money and appellant told him not to worry; and that he had agreed because he had never

been to Dallas. Solis related that about 8:00 p.m. on November 8, 1988, the appellant picked him up at his uncle's house; that appellant was driving a late model black pickup truck; that they drove about a mile to a junk yard; and that appellant pointed out the yellow 1976 Ford as the car they would drive to Dallas. Solis told the jury that appellant bought the gas and the food on the trip and that when they stopped for gas in Kingsville, appellant had fixed the dash lights in the car. Solis testified that appellant drove most of the way; that he (Solis) had been driving for about ten miles when they were stopped by the officers; that he was not aware of the marihuana in the car; that he had smoked marihuana when he was 15 years of age and didn't like it; and that he had not smelled any marihuana while in the car. He admitted the wallet with the marihuana emblem had been given to him three years before; that he had borrowed the pen knife from a co-worker and had forgotten to return it; and that he worked for his brother-in-law installing and repairing automobile glass. He also denied knowing a Sergio Manzano. Solis called his mother and sisters to establish that appellant had been trying to contact him on November 7th or 8th while using the mobile phone in a black pickup truck.

■ The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Valdez v. State*, 776 S.W.2d 162, 165 (Tex.Cr.App.1989); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App. 1984). The standard for review is the same in both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240 (Tex.Cr.App.1986). A conviction based on circumstantial evidence, however, cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.

App.1989); *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Cr.App.1987). If, after viewing the evidence in the light most favorable to the verdict, there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that guilt has been shown beyond a reasonable doubt. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Cr.App. 1988); *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Cr.App.1985), cert. denied, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986). In circumstantial evidence cases, it is not necessary that every fact point directly and independently to the defendant's guilt. It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating evidence. *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Cr.App.1983) cert. denied 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752. The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis, but that the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, one not out of harmony with the evidence. *Flores v. State*, 551 S.W.2d 364, 367 (Tex.Cr.App. 1977); *see also Russell*, 665 S.W.2d at 776; *Hooker v. State*, 621 S.W.2d 597, 601 (Tex. Cr.App.1980). Simply because a defendant presents a different version of the events does not render the evidence insufficient. *Little v. State*, 758 S.W.2d 551, 562–63 (Tex.Cr.App.1988), cert. denied, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988).

▪▪▪ In order to prove unlawful possession of a controlled substance, the State must prove the accused (1) exercised care, control and management over the contraband, and that (2) the accused knew the substance he possessed was contraband. *Martin*, 753 S.W.2d at 387; *Nunn v. State*, 640 S.W.2d 304, 305 (Tex.Cr.App.1982); *Watson v. State*, 752 S.W.2d 217, 221 (Tex. App.1988, pet. ref'd). Possession of contraband need not be exclusive and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Cr.App.1985); *Oaks v. State*, 642 S.W.2d 174, 176 (Tex.Cr.App.1982).

▪▪▪ Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband by a showing which indicates the accused's knowledge and control of the contraband. *Waldon v. State*, 579 S.W.2d 499, 501 (Tex.Cr.App.1979); *see also Wiersing v. State*, 571 S.W.2d 188, 190 (Tex.Cr. App.1978). The burden of showing the affirmative link or links rests upon the State. *Damron v. State*, 570 S.W.2d 933, 935 (Tex.Cr.App.1978). Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed. *McGoldrick*, 682 S.W.2d at 578; *Oaks*, 642 S.W.2d at 177. Mere presence of the defendant at the scene of the offense is not enough. Where the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively connect or link the appellant to the contraband by sole or joint possession.

Affirmative and relevant facts linking an accused to the contraband have been noted and listed in several opinions. *See, e.g., Martin v. State*, 753 S.W.2d 384, 387–88 (Tex.Cr.App.1988); *Guiton v. State*, 742 S.W.2d 5, 8–10 (Tex.Cr.App.1987); *see also Chavez v. State*, 769 S.W.2d 284, 288–89 (Tex.App.1989, pet. ref'd); *Trejo v. State*, 766 S.W.2d 381, 384–85 (Tex.App.1989, no pet.). Any list of affirmative links is, of course, non-exclusive. The phrase "affirmative link" in connection with narcotic drug cases apparently appeared for the first time in Texas in *Haynes v. State*, 475 S.W.2d 739, 742 (Tex.Cr.App.1971). The cases therein cited did not use the term. *Haynes* was followed by *Payne v. State*, 480 S.W.2d 732, 734 (Tex.Cr.App.1972) and a legion of other narcotic cases using the term and requiring an affirmative link. This requirement appears to have originated as an outgrowth of the Court of Criminal Appeals' approach to a sufficiency review in circumstantial evidence cases; unless the defendant is "affirmatively" linked to the drugs or narcotics, there will be an

outstanding reasonable hypothesis that the defendant did not possess the contraband at all, or at least did not know the item he possessed was of a forbidden nature, and therefore the conviction can not stand. In this connection, it is observed that in *Human v. State,* 749 S.W.2d 832, 834 (Tex.Cr. App.1988) the court wrote:

> Where the State's case is based upon circumstantial evidence, the "exclusion of an outstanding reasonable hypothesis" test may be used as *one* means of making the determination whether the evidence is sufficient. (Emphasis added).

■ With this background, we observe that the appellant seizes upon what he regards as the lack of common affirmative links. He notes that appellant and Solis were not under the influence of drugs, that no drugs were found on their persons, there was no marihuana in plain view, that no marihuana or other contraband were found in the front or back seats, that there was no odor of marihuana until an officer moved the back seat, that appellant did not have an excessive amount of money or a weapon on his person and that he did not act nervous or make furtive gestures. Hence, he contends that the evidence is insufficient.

The evidence shows that the officers stopped the 1976 Ford in the early morning hours and found it contained sixty pounds and eight ounces of marihuana, valued at approximately $38,000.00, hidden in secret compartments. The occupants did not know who owned the car, claimed not to know each other's last name, and gave conflicting stories to the officers about the purpose of their nighttime trip to Dallas from the Rio Grande Valley. The vehicle's title had been registered in the name of a man no one knew or could locate. The vehicle, apparently inoperable when purchased, had been repaired and equipped with a secret compartment. It bore a 1988 Mexican tourist sticker. A veteran officer testified that sophisticated smugglers of contraband from Mexico use secret compartments, and take steps which in effect eliminate many of the common affirmative links utilized by the courts in sufficiency questions in narcotic cases.

■ Appellant and his co-defendant Solis blamed each other. Solis testified that appellant initiated the trip to Dallas promising to pay all his expenses; that appellant left behind his brother-in-law's late model pickup truck and took the 1976 Ford from the junk yard; that appellant drove until about ten miles before they were stopped; that when he (Solis) was permitted to drive, appellant instructed him to stay on IH 35 and not to exit. Thus, there was evidence that appellant exercised dominion or control over the vehicle in which the contraband was concealed and may be deemed to have possessed the contraband. *See United States v. Olivier–Becerril,* 861 F.2d 424, 426 (5th Cir.1988). While knowledge of the presence of contraband may be inferred from control over the vehicle in which the contraband is concealed, *United States v. Richardson,* 848 F.2d 509, 513 (5th Cir. 1988), particularly where the amount of the contraband is large enough to indicate that the accused knew of its presence, *cf. Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Cr. App.1981); *Carvajal v. State,* 529 S.W.2d 517, 520–21 (Tex.Cr.App.1975), cert. denied, 424 U.S. 926,. 96 S.Ct. 1139, 47 L.Ed.2d 336 (1976), it has been noted that where the contraband is found in hidden compartments in a vehicle, reliance should not be placed solely upon control of the vehicle to show knowledge. *Olivier–Becerril,* 861 F.2d at 426–27; *United States v. Del Aguila–Reyes,* 722 F.2d 155, 157 (5th Cir.1983). Rather, the court must look to additional factors indicating knowledge such as circumstances indicating a consciousness of guilt on the part of the defendant.

The jury was well aware that the cargo with which the appellant had been entrusted was valuable. It was a reasonable inference that the appellant would not have been entrusted in taking the valuable cargo to Dallas in the Ford if he were a mere casual employee, ignorant of all the details surrounding his responsibility and the importance of the cargo in his care. *See Del Aguila–Reyes,* 722 F.2d at 157. In addition, the evidence shows that appellant in-

terrupted the trip at Kingsville not only for gas, but also to get under the dash of the Ford to repair the dash lights so he could see how fast they were traveling. A reasonable inference is that appellant wanted to avoid being stopped for speeding by police officers. When Solis was permitted to drive, he was given explicit instructions by the appellant. After being stopped, appellant and Solis gave conflicting stories to the officers. Appellant urges that evidence shows that he was not nervous or excited, and the arresting officer indicated that appellant made no further statement upon the finding of the contraband in his presence. Inference of knowledge from the lack of concern or surprise under these circumstances can be made. *Del Aguila–Reyes,* 722 F.2d at 158. A calculator was found in appellant's pocket, but he claimed he had just found it in the car and did not know how to use it.

 Proof of a culpable mental state generally relies upon circumstantial evidence. *Gardner v. State,* 736 S.W.2d 179, 182 (Tex.App.1987), aff'd, 780 S.W.2d 259 (Tex.Cr.App.1989). Thus, proof of knowledge is an inference drawn by the trier of fact from all the circumstances. *Dillon v. State,* 574 S.W.2d 92, 94–5 (Tex.Cr.App.1978); *Trejo,* 766 S.W.2d at 385–86. Knowledge can be inferred from the conduct of and remarks by the accused and from circumstances surrounding the acts engaged in by the accused. *Ercanbrack v. State,* 646 S.W.2d 480, 481 (Tex.App.1982, no pet.).

In any sufficiency question in a case in which a jury has returned a verdict, it must be remembered that jurors are the triers of fact, the judges of the credibility of the witnesses, and of the weight to be given to their testimony. Tex.Code Cr.P. Ann. art. 38.04 (1979). The jury is entitled to accept or reject all or any part of the testimony given by the witnesses for the State and the accused. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Cr.App. 1987). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Bowden v. State,* 628 S.W.2d 782,

784 (Tex.Cr.App.1982); *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Cr.App.1974).

In viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt all of the essential elements of the offense charged, including the care, control, and management over the marihuana, and the appellant's knowledge that the substance he possessed was contraband. We need not reach and discuss whether the evidence was sufficient to support appellant's conviction as a party as was done in *Mares v. State,* 801 S.W.2d 121, 127–28 (Tex.App. 1990, no pet.). Appellant's second point of error is overruled.

The judgment is affirmed.