

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY LEE SEAVER, | § | No. 08-13-00038-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 355th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Hood County, Texas |
| | § | |
| Appellee. | | (TC # CR12173) |
| | § | |

## **O P I N I O N**

Timothy Lee Seaver appeals his conviction for possession of a controlled substance, over one gram and under four grams of methamphetamine, a third degree felony enhanced to a second degree felony.[1] A jury found Appellant guilty and sentenced him to ten years' confinement in the Texas Department of Criminal Justice - Institutional Division. For the reasons that follow, we affirm the judgment of the trial court.

### **FACTUAL SUMMARY**

At approximately 3:00 a.m. on December 24, 2011, Officer Brent Blackmon, a patrol officer with the Granbury Police Department observed a suspicious vehicle leave the Classic Inn and pull into the Granbury Inn and Suites Hotel. The behavior was suspicious because both

---

[1] Appellant was charged by indictment. He pled not guilty as to the possession offense, but true to the enhancement paragraph.

hotels were known for illegal activity. The driver of the vehicle, later identified as Appellant, pulled up to a side building of the Granbury Inn and turned off his lights.

Officer Blackmon drove slowly through the parking lot and noticed that Appellant was still in the vehicle. Due to the suspicious nature of Appellant's actions, Officer Blackmon pulled around the side of the building, ran the license plate, and waited for Appellant to leave. His check revealed that Appellant's vehicle registration had expired the previous month. Officer Blackmon waited for Appellant's vehicle to leave the parking lot and then initiated a traffic stop.

Appellant promptly pulled the vehicle over. Officer Blackmon then discovered that Appellant's driver's license was suspended and he had no proof of insurance. The officer placed Appellant under arrest for driving with an invalid driver's license and no proof of insurance, a Class B Misdemeanor.

Officer Blackmon then called for on-scene back up.[2] Officer Patrick Garrett Wiginton responded, arriving at the scene approximately three minutes later. Appellant was still inside the vehicle when Officer Wiginton arrived.[3] When Appellant stepped out of the vehicle, the officers noticed that his pants were unbutton and unzipped. Once Appellant was out of the vehicle, Officer Blackmon patted him down. He found $4,275.26 cash in Appellant's wallet.[4] He asked Appellant if there was any more cash in the vehicle and Appellant responded no. At some point before he was removed from the scene, Appellant asked for his medications in the vehicle. However, after the officers told him that they would have to retrieve the medicine from the car

---

[2] Officer Wiginton was called because it is the policy of the Granbury Police Department to have a second officer on-scene when an arrest is made.

[3] Officer Wiginton testified that he arrived after the traffic stop but before Appellant was removed from the vehicle and detained.

[4] Officer Blackmon counted the money found in Appellant's wallet on camera. Officer Wiginton testified that he was present when the money was counted.

for him, Appellant changed his mind. Officer Blackmon took Appellant to the police station and Officer Wiginton stayed behind to inventory the vehicle before it was towed.

Officer Wiginton began the inventory on driver's side. Shortly thereafter he noticed a dollar bill sticking out of the center console. He wanted to document any money that was left in the vehicle, so he opened the console.[5] Inside, he found a clear plastic baggie, rolled up, and containing a clear crystal substance which he believed to be methamphetamine. Officer Wiginton commented that the substance in the baggie still looked "wet", indicating that it was freshly made.[6] He performed a field test on the substance and it came back positive for methamphetamine. The evidence was later sent to the DPS Crime Lab in Abilene where it was confirmed as methamphetamine, weighing 2.05 grams. Officer Wiginton continued to look through the vehicle and found a roll of cash ($1,300) in a sunglasses holder above the center console.

The first witness to testify for the defense was Lynn Foster. Foster is a cattle rancher. Appellant had been working for her a couple times a month, on and off, for seventeen years. In December 2011, she paid Appellant $2,500, with two $1,000 Christmas bonuses. She testified the two Christmas bonuses were not given to Appellant until after the date he was arrested, but she believed she gave Appellant the $2,500 on December 1. She also gave Appellant $5,000 on December 22 to purchase equipment (a front-end loader) at an auction.

---

[5] The policy of the Granbury Police Department is to inventory any valuables in the vehicle. This includes taking inventory of contents contained within any unlocked compartments within the vehicle.

[6] At trial he explained further by stating:

> Methamphetamine is a crystallized, kind of a hardened substance that can -- chunks can break off of. When I said, 'It's pretty wet,' it had a lot of liquid in the bag still, it hadn't completely solidified, so, to me, that would represent that it's -- that it's fresher, that it's not older methamphetamine, that it hasn't had time to set yet.

Foster testified that she has a criminal history involving a felony conviction for delivery of methamphetamine some ten years prior to trial. She is not a meth user and she never saw Appellant in possession of methamphetamine.

Next, Brandie Sams testified that she had known Appellant for approximately eleven years and knew him well.[7] She admitted that she has a meth problem, and that she's had it for "a good while." She is friends with Appellant's girlfriend, who also uses meth. According to Sams, Appellant was aware that his girlfriend and Sams used meth, but, to the best of her knowledge, Appellant was not a meth user.

On December 22, 2011, Sams borrowed Appellant's vehicle and used it to pick up some methamphetamine.[8] When she returned the car that evening, she left the methamphetamine in Appellant's console with the lid closed. On direct examination, she claimed she did not tell Appellant about the meth. But on cross-examination, Sams clarified that while she did not tell Appellant about the meth at the time she dropped the car off, she did call him later that evening and told him that she left something in the car. She was sure that Appellant knew that by "something," she meant meth.

Finally, Sams was shown State's Exhibit 5, a photo depicting the money sticking out of the console. She denied the money was hers, and avowed she did not leave any money in the car.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, Appellant argues that the evidence is legally insufficient to sustain his conviction.

---

[7] Prior to Sams taking the witness stand and outside the presence of the jury, the trial court fully admonished her regarding her rights and the implications of her testimony. Sams was represented by counsel.

[8] Sam's testified that she was high when she borrowed Appellant's car the morning of December 22.

*Standard of Review*

In evaluating a legal sufficiency challenge, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894 (Tex.Crim.App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 318-20, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). In conducting our review, we must recognize and respect that it is the fact-finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2781; *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). We presume that the jury resolved any conflicts in the evidence in favor of the verdict and, so long as such resolution is rational, we defer to that resolution. *Brooks*, 323 S.W.3d at 894-95; *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010). Therefore, in reviewing the record, we treat direct and circumstantial evidence equally. *Clayton*, 235 S.W.3d at 778; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)(recognizing that circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13; *see Powell v. State*, 194 S.W.3d 503, 507 (Tex.Crim.App. 2006); *see also Laster v. State*, 275 S.W.3d 512, 523 (Tex.Crim.App. 2009)(noting that as long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable"). As with any question

of circumstantial evidence and inference, "the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Boston v. State*, 373 S.W.3d 832, 837 (Tex.App.--Austin 2012, pet. granted), *quoting Obigbo v. State*, 6 S.W.3d 299, 306 (Tex.App.--Dallas 1999, no pet.).

### *Possession of a Controlled Substance*

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). To support a conviction for unlawful possession of a controlled substance, the State must prove: (1) that the defendant exercised care, custody, control, or management over the substance; and (2) that he knew the matter possessed was contraband. TEX.HEALTH&SAFETY CODE ANN. § 481.115(a)(West 2010); *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). "Possession" is defined as "actual care, custody, control, or management." TEX.PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2013). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX.PENAL CODE ANN. § 6.01(b)(West 2011). The evidence may be direct or circumstantial, but it must establish "that the accused's connection with the [contraband] was more than just fortuitous." *Poindexter*, 153 S.W.3d at 406, *citing Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

Mere presence in the same place as the controlled substance alone is not sufficient to justify a finding of possession. *Evans*, 202 S.W.3d at 161-62; *Harrison v. State*, 555 S.W.2d 736, 737 (Tex.Crim.App. 1977). However, when a defendant is exerting exclusive control over

the vehicle, knowledge of the contents of the vehicle, including knowledge of the contraband may be inferred. *Menchaca v. State*, 901 S.W.2d 640, 652 (Tex.App.--El Paso 1995, pet. ref'd); *Castellano v. State*, 810 S.W.2d 800, 806 (Tex.App.--Austin 1991, no pet.), *citing United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988). Although knowledge may be inferred when the accused is the sole occupant of a vehicle, courts have cautioned that when contraband is found in a hidden compartment of a vehicle, reliance should not be placed solely upon control of the vehicle to show knowledge. *Menchaca,* 901 S.W.2d at 652. Instead, courts have often required a showing of additional factors or "affirmative links" indicating knowledge. *See Menchaca*, 901 S.W.2d at 652.

In the context of a charge of possession of a controlled substance, the following list of non-exclusive links, either singly or in combination, have been found to be sufficient to uphold a conviction: (1) the contraband was in plain view or recovered from an enclosed space; (2) the accused either owned or had the right to possess the place where the drugs were found; (3) the accused was found with a large amount of cash; (4) the narcotic was in close proximity to the accused; (5) the narcotic was conveniently accessible to the accused; (6) a strong residual odor of the narcotic was present; (7) the accused possessed other contraband when arrested; (8) other contraband or drug paraphernalia was present; (9) the physical condition of the accused indicated recent consumption of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused tried to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements when arrested; (16) the quantity of the contraband; (17) the accused was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12;*Muckleroy v.*

*State*, 206 S.W.3d 746, 748 n.4 (Tex.App.--Texarkana 2006, pet. ref'd). The legal issue with respect to these links is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans*, 202 S.W.3d at 162 n.9, *quoting Evans*, 202 S.W.3d at 166 (Womack, J., concurring). It is the logical force of such links, rather than the quantity, that is important in determining whether the evidence is legally sufficient to connect the accused to the contraband. *Evans*, 202 S.W.3d at 162; *Roberson v. State*, 80 S.W.3d 730, 735 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). We need not consider affirmative links or factors which are absent from the evidence. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex.App.--Houston [1st Dist.] 2008, pet. ref'd).

### *Application of Law to Facts*

The record shows that Appellant was the owner, driver, and sole occupant of the vehicle. Because Appellant had exclusive control of the vehicle, it may be inferred that he had knowledge of what was in it, *i.e.*, the methamphetamine. *See Menchaca*, 901 S.W.2d at 652; *Castellano*, 810 S.W.2d at 806. However, because the meth was concealed in the console, reliance solely on Appellant's control of the vehicle should not be used to infer knowledge. *See Castellano*, 810 S.W.2d at 806. Therefore, we look to additional factors or links which support Appellant's knowledge of the contraband.

In addition to Appellant being the owner and sole occupant of the vehicle where the contraband was found, the following factors support a finding that Appellant had knowledge of the methamphetamine. First, Appellant was pulled over at 3 a.m. after driving from one hotel to another, pulling up to the side of a building and turning of his lights. Both hotels were known for prostitution and drugs. Next, the meth was found in the console of Appellant's car. The

console was next to the driver's seat and therefore in close proximity and easily accessible to Appellant. The police officers also found a one dollar bill sticking out of the console and a cell phone and change in the console, and there was testimony that these items belonged to Appellant. These facts indicate that Appellant had accessed the console after Sams returned the vehicle with the meth inside. In addition, Appellant was found with $4,275.26 on him, and a large amount of cash ($1,300.00) found in the sunglasses holder in his vehicle. Although Appellant was calm and cooperative, and there were no signs he was under the influence of drugs, he did exhibit some suspicious behaviors. The record also shows that when Appellant stepped out of the vehicle, his pants were unbuttoned and unzipped. There was also testimony that he asked the officers to get prescriptions from his vehicle, but changed his mind when he realized the officers would have to retrieve the medicine for him. Appellant also became concerned when he realized his vehicle would be inventoried and towed. With respect to the last two facts, a rational jury could infer from this behavior that Appellant knew about the meth in his car and was concerned the police would find it.

Finally, we address the testimony of Brandie Sams. Sams testified that she borrowed Appellant's car two days before he was arrested, purchased the methamphetamine, and left it in Appellant's console. However, she also testified that she called Appellant the night she returned the vehicle and told him about the drugs. Specifically, Sams testified:

Q. [BY COUNSEL FOR APPELLANT]: All right. But you did call him later that evening and tell him --

A. [MS. SAMS]: Yes.

Q. -- there was methamphetamine in the car.

A. Yes, ma'am.

Q. You told this defendant there was meth in the car.

A. Yes, ma'am. Not -- but not when I dropped the car off, because I -- I -- I forgot about it.

Q. I understand. I understand. So sometime after eight o'clock, you made a phone call to this defendant --

A. Yes, ma'am.

Q. -- on his cell phone.

A. Yes, ma'am.

Q. And you told him, 'There's meth in your car.'

A. I told him there was some -- I left something in his car.

Q. And you and he both understood that meant methamphetamine.

A. Well, the phone hung up, so we -- I didn't really get a chance to tell him what was left in there.

Q. But you just testified a minute ago that you told him there was meth in the car.

A. I told him there was something in the car.

.  .  .

Q. Okay. And so he knew sometime that night, on either the evening of the 22nd or the early morning of the 23rd, that there was something in his car, likely methamphetamine?

A. I'm sure that -- that's something he -- I'm sure he knew it meant that.

Q. Okay. So you're sure he knew that, because he knew you were a meth head.

A. Yes. If that's what you want to call me.

From these affirmative links the jury could reasonably infer that Appellant knew of the existence of the methamphetamine and exercised control over it. *See Shipp v. State*, 292 S.W.3d 251 (Tex.App.--Texarkana 2009, no pet.)(evidence was sufficient to establish that defendant had knowledge that his vehicle contained illegal substance so as to support conviction for possession

of a controlled substance).  Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable jury could have found, the essential elements of possession (control and knowledge) beyond a reasonable doubt.  We overrule the sole point and affirm the trial court's judgment.

June 4, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)