ACCEPTED
12-15-00073-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/19/2015 11:42:44 PM
CATHY LUSK
CLERK

## NUMBER 12-15-00073-CR

### IN THE TWELFTH DISTRICT COURT OF APPEALS

### TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
8/19/2015 11:42:44 PM
CATHY S. LUSK
Clerk

### YAGO SANTAIN FOUNTAIN,

Appellant

v.

### THE STATE OF TEXAS,

Appellee

From the 114th District Court of Smith County, Texas

Trial Cause Number 114-0896-14

## STATE'S BRIEF

### ORAL ARGUMENT REQUESTED

### D. MATT BINGHAM

Criminal District Attorney

Smith County, Texas

### AARON REDIKER

Assistant District Attorney

State Bar of Texas Number 24046692

Smith County Courthouse, 4th Floor

Tyler, Texas 75702

Phone: (903) 590-1720

Fax: (903) 590-1719

Email: arediker@smith-county.com

## TABLE OF CONTENTS

Index of Authorities..................................................................................................... 2

Statement of Facts...................................................................................................... 3

Summary of Argument............................................................................................... 4

I.ISSUE ONE: The combined circumstantial evidence linking appellant with the contraband, coupled with the reasonable inferences therefrom, was sufficient to establish that appellant knowingly possessed the marihuana found under the hood of the vehicle in which he was a passenger. .................................................................. 5

Standard of Review ..................................................................................................... 5

Argument....................................................................................................................... 6

Certificate of Compliance ........................................................................................ 18

Certificate of Service ................................................................................................ 18

## Texas Cases

*Blackman v. State*, 350 S.W.3d 588 (Tex. Crim. App. 2011) ............................................ 16

*Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995) ...................................................... 7

*Castellano v. State*, 810 S.W.2d 800 (Tex. App.—Austin 1991, no pet.) .......................... 14

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999) ...................................................... 6

*Dixon v. State*, 918 S.W.2d 678 (Tex. App.—Beaumont 1996, no pet.) .......................... 10

*Duff v. State*, 546 S.W.2d 283 (Tex. Crim. App. 1977) ........................................................ 16

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006) ............................................ 6, 8, 16

*Fields v. State*, 932 S.W.2d 97 (Tex. App.—Tyler 1996, pet. ref'd) ........................... 10, 13

*Gant v. State*, 116 S.W.3d 124 (Tex. App.—Tyler 2003, pet. ref'd) ................................. 15

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004) ................................................... 11

*Hernandez v. State*, 538 S.W.2d 127 (Tex. Crim. App. 1976) ........................................ 8, 16

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ........................................................ 6

*Hurtado v. State*, 881 S.W.2d 738 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)8, 14, 15

*James v. State*, 264 S.W.3d 215 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ... 8, 14

*Lassaint v. State*, 79 S.W.3d 736 (Tex. App.—Corpus Christi 2002, no pet.) ................. 12

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ...................................................... 5

*Medina v. State*, 242 S.W.3d 573 (Tex. App.—Waco 2007, no pet.) ................................. 13

*Muckleroy v. State*, 206 S.W.3d 746 (Tex. App.—Texarkana 2006, pet. ref'd) .............. 12

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005) .............................................. 6

*Siroky v. State*, 653 S.W.2d 476 (Tex. App.–Tyler 1983, pet. ref'd) ................................... 7

*Whitworth v. State*, 808 S.W.2d 566 (Tex. App.—Austin 1991, pet. ref'd) .................... 14

*Willis v. State*, 192 S.W.3d 585 (Tex. App.—Tyler 2006, pet. ref'd) ........................... 9, 12

## Federal Cases

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................................ 5

IN THE TWELFTH DISTRICT COURT OF APPEALS

TYLER, TEXAS

YAGO SANTAIN FOUNTAIN,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 114th District Court of Smith County, Texas

Trial Cause Number 114-0896-14

## STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the undersigned Assistant Criminal District Attorney, respectfully requesting that this Court overrule appellant's sole alleged issue and affirm the judgment of the trial court in the above-captioned cause.

## STATEMENT OF FACTS

Appellant has stated the essential nature of the proceedings and the evidence presented at trial (Appellant's Br. 2-4). In the interest of judicial economy,

any other facts not mentioned therein that may be relevant to the disposition of appellant's issue will be discussed in the State's argument in response.

SUMMARY OF ARGUMENT

The State showed substantially more factors linking appellant to the contraband than mere presence, and the logical force of all the evidence, direct and circumstantial, was legally sufficient to show that appellant knowingly possessed marihuana. These factors included the following: (1) appellant's presence at the time of the search of the vehicle in which the marihuana was found, (2) his conduct, including extreme nervousness, showed a consciousness of guilt, (3) appellant proximity and access to the marihuana under the hood, (4) the odor of marihuana was present inside the vehicle, (5) the stories of appellant and the driver of the vehicle as to the purpose of their trip to Dallas from Louisiana were inconsistent and implausible, (6) items to mask the scent of marihuana from detection by law enforcement were found in the vehicle, (7) the amount of contraband was significant, (8) the marihuana was located in an enclosed space,

4

(9) appellant was traveling on a major drug corridor, and (10) appellant did not act surprised or shocked when the marihuana was discovered.

**I. ISSUE ONE:** The combined circumstantial evidence linking appellant with the contraband, coupled with the reasonable inferences therefrom, was sufficient to establish that appellant knowingly possessed the marihuana found under the hood of the vehicle in which he was a passenger.

STANDARD OF REVIEW

Articulating the standard of review for legal sufficiency in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court stated that, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." When conducting a legal sufficiency review, a reviewing court must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and not whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The same standard applies equally to circumstantial and direct evidence. *Id.* When examining the evidence

for legal sufficiency, a reviewing court's role is not to become a "thirteenth juror", and it may not "re-evaluate the weight and credibility of the record evidence" and thereby substitute its judgment for that of the jury. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, "[t]he reviewing court must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19) (internal quotation marks omitted).

ARGUMENT

In a single issue, appellant claims the State's evidence showing that she possessed the marihuana at issue was legally insufficient (Appellant's Br. 4-23). "[I]n a possession of a controlled substance prosecution, 'the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.'" *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (quoting *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). "Possession need not be exclusive, however, and a showing of

6

joint possession with another is sufficient." *Siroky v. State*, 653 S.W.2d 476, 479 (Tex. App.–Tyler 1983, pet. ref'd). Direct or circumstantial evidence may be used to prove knowing possession of a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous." *Evans*, 202 S.W.3d at 161. As the Court of Criminal Appeals explained in *Evans*:

> Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g.," links"), may well be sufficient to establish that element beyond a reasonable doubt. (footnote omitted).

*Id.* at 162. The Court also provided a nonexclusive list of possible links that Texas courts had recognized as sufficient, "either singly or in combination, to establish a person's possession of contraband":

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant

made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id*. at 162 n.12. "However, the absence of the above facts and circumstances is not evidence of appellant's innocence to be weighed against evidence tending to connect appellant to the marihuana." *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). *See also James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present"); *Hurtado v. State*, 881 S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) ("Because our review is no longer based on whether the State disproves reasonable alternatives to a defendant's guilt, we need not consider affirmative link factors that are absent from the evidence."). "These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove

a knowing 'possession.'  They are not a litmus test."  *Evans*, 202 S.W.3d at 162 n.12.

"It is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict."  *Id.* at 166.

Here, the evidence linking appellant to the marihuana consisted of substantially more than appellant's mere presence as a passenger in the vehicle where the drugs were found (Appellant's Br. 4).  The arresting officer, Trooper Martin, testified that Interstate 20 is a known drug corridor and that Dallas is a "drug hub, kind of a station where, you know, believe it or not, cartels and organized gangs will get that dope to Dallas, and then they'll distribute it, you know, up north or east or wherever they can to supply other organized crime affiliates." (XI Rep.'s R. at 34).  *See Willis v. State*, 192 S.W.3d 585, 593 (Tex. App.—Tyler 2006, pet. ref'd) (finding link where defendant stopped on Interstate 20, "a heavily traveled narcotics corridor from Dallas to the east coast").  In the early morning hours of 17 September 2013, Trooper Martin had initiated a traffic stop on a Chevrolet Suburban for a defective license plate lamp (XI Rep.'s R. at 42, 44).  The vehicle was traveling eastbound on I-20, away from Dallas and toward Louisiana (*Id.* at 43).  As

Trooper Martin approached the vehicle, he noticed that appellant, sitting in the passenger seat, had already unbuckled his seatbelt and was holding it in his hand while giving the trooper a "deer in the headlight" look (*Id.* at 45). Trooper Martin testified that he found this very odd and asked appellant if he planned on running (*Id.* at 46). After exiting the vehicle, the driver, Lapatrick Mitchell, told Martin that the Suburban belonged to a friend (*Id.* at 49). Martin stated that traveling long distances in a third party's vehicle is a suspicious circumstance not uncommon among drug traffickers (*Id.* at 49-50). S*ee Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.) (that the vehicle in which the drugs were found was borrowed tended to link defendant to contraband).

Mitchell also told Trooper Martin that he was traveling to Dallas, about three hours from Louisiana and six hours roundtrip, "to get a tire fixed" and to take appellant's aunt back to Dallas (XI Rep.'s R. at 50-51). Appellant, however, stated that they were travelling to Dallas to drop off Mitchell's aunt and to buy a new tire because it was cheaper in Texas (*Id.* at 57-58; State's Ex. 1). *See Willis*, 192 S.W.3d at 594 (finding link where defendant and his passenger "gave conflicting stories

about the underlying reasons for their trip."); *Fields v. State*, 932 S.W.2d 97, 104 (Tex. App.—Tyler 1996, pet. ref'd) (finding link where appellant and driver "gave conflicting stories as to their purpose for coming to Texas and activities while in Texas"). Trooper Martin did not think it plausible that appellant and Mitchell would take a six-hour drive in a Suburban to "save a couple bucks on a tire." (XI Rep.'s R. at 145). *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt."). Further, appellant could not tell the trooper when they had left Louisiana to drive to Dallas (XI Rep.'s R. at 58-59), and he had to be prompted by Martin until settling on "sunup" (State's Ex 1). Mitchell had stated that they left Louisiana "about eleven." (XI Rep.'s R. at 122). Appellant appeared very nervous while Trooper Martin questioned him—much more nervous than a passenger would normally be during a routine traffic stop (*Id.* at 53-55). Appellant was breathing rapidly, and his hands were visibly trembling (*Id.* at 53, 56). *See Willis*, 192 S.W.3d at 594 (finding link where defendant "appeared extremely nervous

11

because his hands were trembling and the artery on his neck was throbbing.");

*Lassaint v. State*, 79 S.W.3d 736, 744 (Tex. App.—Corpus Christi 2002, no pet.) ("Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt."). Appellant was so nervous, in fact, that Martin asked him whether he had any warrants out for his arrest, but appellant stated that he did not (XI Rep.'s R. at 56-57).

After Mitchell gave him consent to search the vehicle, Trooper Martin located "a brand new roll of cellophane plastic wrap and two cans of, like, axle grease" in one of the rear panels where the jack was kept (*Id.* at 63). He testified, "[a] lot of times when people transport illegal narcotics or drugs, they use cellophane to wrap it, and they use axle grease to try to mask the smell and odor not only for us but also for the canine; if a canine is called, to try to throw the canine off." (*Id.*). *See Muckleroy v. State*, 206 S.W.3d 746, 749 (Tex. App.—Texarkana 2006, pet. ref'd) (finding link where "numerous pieces of aluminum foil, commonly used to wrap narcotics, were inside the vehicle"); *Willis*, 192 S.W.3d at 594 (finding link where "[a] strong scent of air freshener emanated from the car, which Hellen stated is an

indicator of a common practice employed by drug traffickers to cut down the smell of the drugs"). Trooper Martin continued: "And when I got to the front driver's side, I started to look underneath the dash, and I got a big hint of raw marijuana smell – odor." (XI Rep.'s R. at 64). He stated that raw marihuana has "a more intense odor" than burnt marihuana (*Id.*), and he was "100 percent sure" that he could smell the odor from the dashboard inside the vehicle (*Id.* at 150). After releasing the hood latch from inside the vehicle, Trooper Martin discovered three large bricks of marihuana, totaling 8.59 pounds (*Id.* at 176), sitting right beneath the hood on top of the engine compartment (*Id.* at 66-67; State's Ex. 1-3). *See Fields*, 932 S.W.2d at 104 (finding link between passenger and contraband where, "the drugs were found concealed beneath the closed hood of the Lincoln, and the hood latch was controlled from the interior of the car"); *Medina v. State*, 242 S.W.3d 573, 576-77 (Tex. App.—Waco 2007, no pet.) (holding contraband found under hood of vehicle was in close proximity to defendant, who was asleep in back seat). On the video, appellant and Mitchell can be seen exchanging several glances as Trooper Martin releases the hood latch and walks to the front of the vehicle to look

13

underneath the hood (State's Ex. 1). It was not unreasonable for the jury to conclude from this behavior that both men knew exactly what Martin was about discover under the hood. *See Hurtado*, 881 S.W.2d at 743 (finding link based on "appellant's nervousness and unusual conduct in the manner of his frequent glances toward the particular place where the contraband was found"); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.) ("Knowledge can be inferred from the conduct of and remarks by the accused and from circumstances surrounding the acts engaged in by the accused."). Immediately after finding the marihuana, Trooper Martin told both appellant and Mitchell to get on the ground, but they did not immediately respond to his command (XI Rep.'s R. at 79). *See Whitworth v. State*, 808 S.W.2d 566, 570 (Tex. App.—Austin 1991, pet. ref'd) (defendant's reaction to being arrested may serve as link to contraband). Martin then performed a felony takedown of both men, and he can be seen on the video repeatedly telling them to get on the ground (State's Ex. 1). Mitchell actually took a step to the side rather than dropping down, and the trooper thought that they might be getting ready to run or circle around him (XI Rep.'s R. at 79). *See James*,

14

264 S.W.3d at 220 (finding link where defendant was "nervously looking around in a manner that made the officers believe he was going to attempt to flee."). Neither appellant nor Mitchell appeared surprised when Trooper Martin discovered the marihuana, and appellant nonchalantly denied ownership of the drugs while Mitchell remained silent (XI Rep.'s R. at 92, 152, 166-67). *See Castellano*, 810 S.W.2d at 807 (inference of knowledge can be made from defendant's lack of concern or surprise when contraband discovered); *Fields*, 932 S.W.2d at 104 (finding link between contraband and passenger where he "exhibited unnatural equanimity and lack of concern throughout the temporary detention and the subsequent investigation").

Finally, Trooper Martin described the contraband as a large sum of marihuana, quite a bit more than the typical user amount of two ounces (XI Rep.'s R. at 80, 87-88, 144). *See Gant v. State*, 116 S.W.3d 124, 131-32 (Tex. App.—Tyler 2003, pet. ref'd) (that there was a significant amount of contraband can serve as a factor showing knowing possession and finding link where eight pounds of marihuana found in a large bag). A pound of good quality marihuana could be sold for as much as $5,000,

and thus, the recovered bricks were worth "quite a bit of money." (XI Rep.'s R. at 88-89). *See Hurtado*, 881 S.W.2d at 743 (finding link where "the large, extremely valuable quantity of cocaine, a near-kilo 'brick,' an amount not likely be misplaced or forgotten by an owner or person entrusted with its possession"); *Blackman v. State*, 350 S.W.3d 588, 595-596 (Tex. Crim. App. 2011) ("A jury could reasonably find that Gordon would not bring two innocent-bystander witnesses hundreds of miles to a large-scale narcotics transaction."). Therefore, examining the evidence in the light most favorable to the jury's verdict and considering the logical force of the factors discussed above linking appellant to the marihuana, a rational jury could have reasonably determined beyond a reasonable doubt that appellant knowingly possessed the marihuana under the hood. *See Evans*, 202 S.W.3d at 166. *Cf. Duff v. State*, 546 S.W.2d 283, 288 (Tex. Crim. App. 1977) ("[T]he conflict between the appellants' stories is a circumstance implying guilt and when it is coupled with the strong odor of marihuana and the presence of what appeared to be marihuana seeds on the floor of the vehicle, the evidence is sufficient to link appellant Pendley with the marihuana."). There was sufficient evidence linking appellant to the

marihuana to support the reasonable inference that he was knowingly in possession of it, and his sole alleged issue should be overruled. *See Hernandez*, 538 S.W.2d at 131.

PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that the Court overrule appellant's alleged issue and affirm the judgment of the 114th District Court of Smith County, Texas, in the above-captioned cause.

Respectfully submitted,

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

/s/ Aaron Rediker
Aaron Rediker
Assistant District Attorney
SBOT #: 24046692
100 North Broadway, 4th Floor
Tyler, Texas 75702
Office: (903) 590-1720
Fax: (903) 590-1719 (fax)
arediker@smith-county.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned attorney certifies that the word count for this document is 2,873 words as calculated by Microsoft Word 2013.

/s/ Aaron Rediker
Aaron Rediker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of August 2015, the State's Brief in the above-numbered cause has been electronically filed, and a legible copy of the State's Brief has been sent by email to A. Reeve Jackson, attorney for appellant, at JLawAppeals@gmail.com.

/s/ Aaron Rediker
Aaron Rediker